UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No.  08-17533-BKC-LMI |
| RENE PIEDRA AND ASSOCIATES, P.A., | Chapter 7 |
| Debtor. | |

_____/

| | |
|---|---|
| BARRY E. MUKAMAL, Chapter 7 Trustee, | Adv. P. No. |
| Plaintiff, | |
| v. | |
| CHURCH OF SCIENTOLOGY OF FLORIDA, INC., | Adv. No. 09-02506-LMI |
| WORLD INSTITUTE OF SCIENTOLOGY ENTERPRISES, INC., | Adv. No. 09-02507-LMI |
| CITIZENS COMMISSION ON HUMAN RIGHTS OF FLORIDA, INC., | Adv. No. 09-02509-LMI |
| DEBORAH FRASHER, AS TRUSTEE OF THE US IAS MEMBERS, | Adv. No. 09-02510-LMI |
| INDIRA BLYSKAL, | Adv. No. 10-01010-LMI |
| ALEXANDER WILLIAM CARR, | Adv. No. 10-01011-LMI |
| SECOND CHANCE PROGRAM., INC., | Adv. No. 10-01012-LMI |
| WENDY L. KEENE, | Adv. No. 10-01013-LMI |
| MGE MANAGEMENT EXPERTS, INC. d/b/a | Adv. No. 10-01014-LMI |
| MARCUS GROUP ENTERPRISES, INC., | |
| IAS ADMINISTRATIONS, INC., | Adv. No. 10-01015-LMI |
| CHURCH OF SCIENTOLGY RELIGIOUS | Adv. No. 10-01016-LMI |
| TRUST, | |
| CHURCH OF SCIENTOLOGY FLAG | |
| SERVICE ORGANIZATION, INC., | |
| CHURCH OF SCIENTOLOGY OF KANSAS | |
| CITY, | |
| Defendants. | |

_____/

EXHIBIT

" 1 "

\10\1663 - # 251536 v1

## FIRST AMENDED ADVERSARY COMPLAINT[1]

Plaintiff, Chapter 7 Trustee, Barry E. Mukamal (hereinafter, the "Trustee"), by and through undersigned counsel, files this First Amended Complaint for avoidance and recovery of (i) fraudulent transfers pursuant to 11 U.S.C. §§ 548, 550 and §§ 726.105(1)(a) – (b) and 726.106, Florida Statutes, aiding and abetting, breach of fiduciary duty, and pursuant to Rules 7001 and 7015 of the Federal Rules of Bankruptcy Procedure, against the Defendants, Church of Scientology of Florida, Inc. ("CSF"), World Institute of Scientology Enterprises ("WISE"), Citizens Commission on Human Rights of Florida, Inc. ("CCHR"), Deborah Fraser, as Trustee of the US IAS Members ("IAS"), Indira Blyskal ("Blyskal"), William Alexander Carr ("Carr"), Second Chance Program, Inc. ("Second Chance"), Wendy L. Keene ("Keene"), MGE Management Experts, Inc. d/b/a Marcus Group Enterprises, Inc. ("MGE"), IAS Administrations, Inc. ("IAS Administrations"), and Church of Scientology Religious Trust ("CCRT"), Church of Scientology Flag Service Organization, Inc. ("CAS FSO")[2], and Church of Scientology of Kansas City ("CAS KC")[3] (collectively, the "Defendants"), and in support thereof states:

### PARTIES, JURISDICTION AND VENUE

1.      This is an action for avoidance and recovery of fraudulent transfers pursuant to 11 U.S.C. §§ 548, 550 and §§ 726.105(1)(a) – (b) and 726.106, Florida Statutes, and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

2.      Rene Piedra, DMD and Associates, P.A. is the debtor in this case (hereinafter, the "Debtor").

---

[1] To the extent the Trustee does not amend the complaint with respect to certain claims, the Trustee reserves the right, should discovery uncover that such claims arising from the same conduct, transactions, or occurrences alleged in the initial complaint do indeed exist, to further amend the Amended Complaint to reallege such claims. *See* Fed. R. Civ P. 15(c)(2), as made applicable by Fed. R. Bankr. P. 7015; Fla. R. Civ. P. 1.190(c).

[2] The Trustee includes CAS FSO as an additional Defendant.

[3] The Trustee includes CAS KC as an additional Defendant.

3.      On June 5, 2008, the Debtor filed its voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code.

4.      On February 9, 2009, the Court converted the case to a Chapter 7.

5.      On March 26, 2009, the Court appointed the Trustee.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

8.      CSF is a Florida non-profit corporation authorized to do business in Florida and within the Southern District of Florida.

9.      WISE is a Florida limited liability company in Miami-Dade County, Florida.

10.     CCHR is a Florida limited liability company operating in Miami-Dade County, Florida.

11.     IAS is a company conducting business in Miami-Dade County, Florida.

12.     Blyskal is an individual residing in Miami-Dade County.  At all times material hereto, Blyskal was the Chief Financial Officer of the Debtor.

13.     Carr is an individual who conducted business in Miami-Dade County, Florida.

14.     Second Chance is a not for profit corporation conducting business in Miami-Dade County, Florida.

15.     Keene is an individual who conducted business in Miami-Dade County, Florida.

16.     MGE is a foreign corporation conducting business in Miami-Dade County, Florida.

17.     IAS is a not for profit corporation conducting business in Miami-Dade County, Florida.

18.     CSRT is a not for profit corporation conducting business in Miami-Dade County, Florida.

19.     CAS FSO is a not for profit corporation conducting business in Miami-Dade County.

20.     CAS KC is a not for profit corporation conducting business in Miami-Dade County.

## GENERAL FACTUAL ALLEGATIONS

### I.    Background on Debtor's Dental Practice

21.     Prior to its bankruptcy, the Debtor operated as a sedation dental practice in Coral Gables, Florida from 1998 through 2008. Sedation dentistry involves the process of providing patients with sedative medications so that treatments can be conducted with minimal or no pain.

22.     From the years 1999 to 2001, the Debtor generated combined gross sales and collections of approximately $518,000. Starting from 2002, however, the Debtor's total combined gross sales and collections began to increase exponentially. From 2002 through 2008, the Debtor generated combined gross sales and collections of approximately $33.5 million. In particular, for the years 2005 through 2008, the Debtor recorded approximately $25.1 million of gross sales on a cash basis.

23.     On information and belief, the Trustee avers that the increase in sales occurs at the same time the lead dentist and principal of the Debtor, Rene Piedra ("Piedra"), became affiliated with the Church of Scientology ("CAS") and began hiring certain members of various CAS affiliated entities for alleged "business management" support. Piedra began his affiliation with the CAS and various CAS related entities as early as mid 2001. Pursuant to the Debtor's financial records, the Debtor first began making payments to MGE, an entity affiliated with CAS on May 31, 2001. The Debtor's first affiliation with the CAS coincides with the time frame where the Debtor's sales began significantly increasing.

24.     The increase in sales in 2002 through 2008, however, did not occur because of actual consideration or value received by retention of the CAS related "business management" support.  In fact, it seems as if the Debtor received no consideration or actual value in retaining the alleged "business management support" from various CAS entities.  As will be further detailed, the increase in sales was, in actuality, due to the Debtor's involvement in a scheme to defraud patients in order to transfer large sums of money to the CAS and CAS related entities.

25.     At all relevant times, Piedra was the lead sedation dentist and principal of the Debtor.

26.     At all relevant times, Blyskal was the Chief Financial Officer ("CFO") of the Debtor.  Although she served as the CFO, the records indicate that she only received a salary from the Debtor in 2005 and during parts of 2008.  For the other years, her compensation was on a contract labor basis.  Despite the fact that she was not on the payroll for salary purposes in the other years, the Debtor's financial records indicate that $1,349,527.62 was transferred from the Debtor's corporate account to or for the benefit of Blyskal in the four years prior to the filing of bankruptcy.

27.     Blyskal, in her capacity as CFO, also had the authority to sign checks, handle the finances, and transfer funds to outside entities.  Two SunTrust bank accounts ending in numbers "727" and "375" ("SunTrust Accounts") reported within the Debtor's general ledgers are in the name of Blyskal.  Her name was basically included on two of the Debtor's corporate accounts.  The SunTrust Accounts were funded with deposits from the Debtor's sales receipts in the amount of approximately $1.8 million and both the funding of these accounts and each and every disbursement from the SunTrust Accounts appear on the Quick Books of the Debtor in connection with its general ledger!  For all intents and purposes, the entire amount of

approximately $1.8 million in the SunTrust Accounts was derived from the Debtor's funds. Accordingly, the funds in the SunTrust Accounts belong to the Debtor.

28.  There were disbursements from the SunTrust Accounts in the amount of approximately $815,000.00 that appear to be related to the Debtor's operating expenses. The balance of $1.0 million was transferred from the SunTrust Accounts, which were in Blyskal's name, to various entities, including the CAS and CAS related entities. Approximately, $293,000.00 of the $1.0 million was transferred to CAS related entities. Specifically, these disbursements include transfers to WISE, CAS FSO, CAS KC, and IAS. In addition, approximately $134,000.00 from the two accounts was transferred to or for the benefit of Blyskal.

29.  In sum, Blyskal had complete authority and discretion in managing the Debtor's finances and utilized two of the Debtor's corporate accounts which were in her name to transfer funds to CAS related entities.

30.  Blyskal was a key member in both the daily operations and transfer of the Debtor's funds in a fraudulent manner to the CAS entities.

**II.    The Debtor's Affiliation with the Church of Scientology ("CAS") and CAS Related Entities**

31.  Through discovery and analysis of various produced documents, the Trustee, on information and belief avers that all of the named Defendants are commonly intertwined and/or affiliated with the CAS. As will be further detailed, through the involvement of the CAS, a wide scale fraud was perpetuated.

32.  As a means of background information, it is important to note there are many independently-chartered organizations and groups which are staffed by the CAS, and pay license fees for the use of Scientology technology and trademarks under the control of CAS management. Many of these organizations do not publicize their affiliation with the CAS.

33.    As to Defendant WISE, it is an umbrella organization of the CAS which licenses the use of various CAS management doctrines, and circulates directories of WISE affiliated businesses.

34.    As to Defendant, CSF, it is the Florida branch of the CAS.

35.    As to Defendant, CCHR, it is a CAS related activist organization dedicated to classifying psychiatric treatments as human rights violations and furthering the CAS's doctrinal opposition to mainstream psychiatric therapies.

36.    As to Defendant, IAS, it is the official membership organization of the CAS.

37.    As to Defendant, Carr, he is a high ranking official within the CAS.  Specifically, on information and belief, he is the director and secretary of the CAS Kansas City.

38.    As to Defendant, Keene, she is also a high ranking official within the CAS. Specifically, on information and belief, the Trustee avers that Keene is an "ethics officer" for the CAS.

39.    As to Defendant, Second Chance, it is a CAS affiliated organization that focuses on providing non-violent prison inmates an alternative means to rehabilitation.  Second Chance applies the teachings of the founder of CAS, L. Ron Hubbard.  It promotes the CAS belief that the proper means of rehabilitation includes cleansing oneself from bodily toxins and waste.

40.    As to Defendant, CSRT, it is a trust established to solicit donations for the benefit of CAS and its affiliated entities from IAS members.

41.    As to Defendant, MGE, it is also a CAS related entity that focuses on providing alleged business management services and applies the teachings of the founder of the CAS, L. Ron Hubbard.  On information and belief, the Trustee avers that MGE is an organization originally established to fund the CAS in its various operations.

42.      As to Defendant, Blyskal, she is a former employee and CFO of the Debtor, who applied and implemented the teachings of CAS at the office.  Blyskal took several courses relating to the CAS's alleged business management doctrines and wrote several essays outlining what she supposedly learned.  Further, she is an active member of CAS and was responsible for the transferring of large sums of the Debtor's funds to the CAS.

43.      As to Defendant, CCHR, it is an advocacy group established in 1969 by the CAS.

44.      As to Defendant, CAS FSO, it is a CAS subdivision that organizes retreats for members.  Specifically, it is the "spiritual headquarters" of the CAS.

45.      As to Defendant, CAS KC, it is the Kansas City branch of CAS.

46.      In addition, Piedra, as lead dentist and principal of the Debtor, had affiliations with the CAS because he implemented the teachings of CAS in his office, attended CAS meetings and seminars, and orchestrated the transfer of large amounts of funds to the CAS.

**III.    CAS's Actual Involvement in the Day-to-Day Operations of the Debtor**

47.      On information and belief, the Trustee avers that the Debtor retained the services of various CAS related entities, in particular MGE and WISE, under the guise of "business management" support.

48.      However, the Debtor, in paying for these alleged "business management" support did not receive reasonable or actual consideration in return.  Specifically, an analysis of MGE's policies and instructional materials show that no such support was given.  In fact, much of the alleged "business management" support was very basic, common sense business concepts.  By way of example, some of the business support reiterated basic concepts such as being "efficient with time and resources" and making sure that all necessary materials were readily available. The hiring and retention of the services of the CAS related entities was part of a larger scheme to transfer funds to CAS related entities for the overall benefit of the CAS.

49.        CAS was heavily involved in the Debtor's dental practice and day-to-day operations.  By way of example, the Debtor employed high ranking officials of the CAS such as Keene and Carr.  In addition, all potential employees were required to take a CAS sanctioned Personality Test.   Further, all prospective employees were required to sign documents acknowledging that the Debtor applied and supported the teachings of the CAS.

50.        On information and belief, the Trustee avers that the CAS was directly involved in the day-to-day managing of the Debtor and its employees.   In fact, the CAS made management and personnel decisions for the Debtor.

51.        Specifically, Defendant, Keene, who is a high ranking official of the CAS KC, wrote educational programs for new employees based on the teachings of the CAS founder, L. Ron Hubbard.  Keene would also arrange for proper advertising of the Debtor's practices including radio and print ads in order to get patients to come to the Debtor's practice.  Once the patients came to the Debtor's practice, Keene would work with them to assist in scheduling their appointments.

## IV.    **Defrauding Patients**

52.        As already mentioned, the actual reason of the increase in sales in the years, 2005 through 2008, is because of the scheme the Debtor perpetrated in defrauding patients.

53.        The Debtor's mode of operation was to perform an initial patient consultation during which a comprehensive treatment plan was prepared.  The treatment plans were very detailed and usually very costly.  Generally, patients would agree to the treatment plans on the same day, and then would be offered financial assistance via various financing companies. Financing applications were then completed by these patients.  The Debtor would then be paid by the financing companies in advance of performing the dental work outlined in the treatment plans.

54.        The Debtor, however, would overbill patients for services that were never provided, misdiagnose ailments, perform poor work, and not reimburse funds when necessary. In many of these cases, the Debtor would not perform any or all of the promised services thus depriving patients of the allotted funds advanced to the Debtor.

55.        Often, patients would have second thoughts about the expensive treatment plans that they had agreed to during their consultations.  However, patients found it difficult to cancel the unperformed dental services, and also found that they were continuing to be directly billed by the finance companies, even after requesting cancellation of future services.  Also, the Debtor had strict policies regarding cancellation of services and appointments, and would charge additional fees to patients who failed to provide sufficient notice in advance of cancelling appointments.  Patients who agreed to treatment plans and then canceled were subject to a $230 administrative fee in addition to a $180 cancellation fee for each previously scheduled appointment.  The Debtor would also schedule multiple appointments for a patient at the time of formation of the treatment plan.  Consequently, patients would be responsible for multiple $180 cancellation fees when they tried to back out of the comprehensive treatment plans.  The Debtor utilized procedural impediments (including expensive cancellation charges and administrative fees) to restrict patients' abilities to cancel on unperformed work.

56.        As CFO, Blyskal had a fiduciary duty to ensure that all corporate funds, including the funds advanced to the Debtor by the financing companies were used in a proper manner. However, she did not exercise reasonable care or diligence in ensuring that these funds were acquired or used in a proper manner.  These advanced funds were transferred to various CAS related entities under Blyskal's supervision.

57.        Blyskal further aided and abetted Piedra in breaching his fiduciary duty to the Debtor and creditors.  Piedra, as the lead dentist and principal of the Debtor held a fiduciary duty

to perform the necessary treatment plans and to not usurp the advanced funds for personal gain. Through the assistance of Blyskal, these advanced funds were used inappropriately. These funds were subsequently transferred to certain CAS affiliated entities for no consideration or actual value.

58.      The fraudulent scheme in getting the patients to sign up for third party financing and not rendering the agreed upon services as well as the heavy CAS involvement in the day to day operations were all part of a larger scheme to transfer funds to CAS related entities. In fact, the objective of the Debtor was not to provide dental services, but to sign up patients to receive advanced funds to transfer to CAS related entities. In the four years prior to the bankruptcy filing, a total of approximately $2.23 million was transferred from the Debtor to the various CAS related entities and Blyskal. Transfer breakdowns per entities are detailed below.

## V.      DEBTOR'S TRANSFERS TO CSF

59.      Within two years of the petition date, the Debtor transferred $31,791.62 to the CSF. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit A."

60.      Within four years of the petition date, the Debtor transferred $78,146.62 to the CSF. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit B."

## VI.      DEBTOR'S TRANSFERS TO WISE

61.      Within two years of the petition date, the Debtor transferred $33,100.00 to WISE. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit C."

62.        Within four years of the petition date, the Debtor transferred $82,889.22 to WISE. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit D."

### VII.    DEBTOR'S TRANSFERS TO CCHR

63.        Within two years of the petition date, the Debtor transferred $14,750.00 to CCHR. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit E."

64.        Within four years of the petition date, the Debtor transferred $54,500.00 to CCHR.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit F."

### VIII.    DEBTOR'S TRANSFERS TO IAS

65.        Within two years of the petition date, the Debtor transferred $40,000.00 to IAS. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit G."

66.        Within four years of the petition date, the Debtor transferred $89,000.00 to IAS. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit H."

### IX.    DEBTOR'S TRANSFERS TO BLYSKAL

67.        Within two years of the petition date, the Debtor transferred $897,774.56 to Blyskal.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit I."

68.        Within four years of the petition date, the Debtor transferred $1,349,527.62 to Blyskal.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit J."

## X.    DEBTOR'S TRANSFERS TO CARR

69.        Within both two years and four years of the petition date, the Debtor transferred a total amount of $44,100.00 to Carr.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit K."

## XI.    DEBTOR'S TRANSFERS TO SECOND CHANCE

70.        Within two years of the petition date, the Debtor transferred $2,300.00 to Second Chance.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit L."

71.        Within four years of the petition date, the Debtor transferred $11,800.00 to Second Chance.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit M."

## XII.    DEBTOR'S TRANSFERS TO KEENE

72.        Within both two years and four years of the petition date, the Debtor transferred a total amount of $43,800.00 to Keene.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit N."

## XIII.    DEBTOR'S TRANSFERS TO MGE

73.        Within two years of the petition date, the Debtor transferred $8,375.00 to MGE. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit O."

74.        Within four years of the petition date, the Debtor transferred $127,121.48 to MGE. A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit P."

## XIV.    DEBTOR'S TRANSFERS TO IAS ADMINISTRATIONS

75.    Within both two years and four years of the petition date, the Debtor transferred a total amount of $32,500.00 to IAS Administrations.    A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit Q."

## XV.    DEBTOR'S TRANSFERS TO CSRT

76.    Within two years of the petition date, the Debtor transferred $10,000.00 to the CSRT.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit R."

77.    Within four years of the petition date, the Debtor transferred $55,000.00 to the CSRT.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit S."

## XVI.    DEBTOR'S TRANSFERS TO CAS FSO

78.    Within both two years and four years of the petition date, the Debtor transferred $86,584.00 to CAS FSO.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit T."

## XVII.    DEBTOR'S TRANSFERS TO CAS KC

79.    Within two years of the petition date, the Debtor transferred $39,166.87 to CAS KC.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit U."

80.    Within four years of the petition date, the Debtor transferred $148,844.62 to CAS KC.  A detail of the disbursements is incorporated by reference herein, and attached as hereto "Exhibit V."

## COUNT I
### Avoidance and Recovery of Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)(1) against CSF

81.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

82.    11 U.S.C. § 548(a)(1)(A) provides that a trustee may "avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made or such obligation was incurred, indebted."

83.    Within two (2) years of the Petition Date, the Debtor transferred $31,791.62 to Defendant, CSF, (hereinafter, the "2 Year Transfers") or for the benefit of CSF.  A detail of the disbursements to CSF or for the benefit of the CSF is incorporated by reference herein and attached hereto as Exhibit "A."

84.    The records of the Debtor do not reflect that the Debtor was ever obligated to CSF for any form of debt.

85.    The 2 Year Transfers constitute a "transfer of an interest of the debtor in property" under 11 U.S.C. § 548(a)(1)(A).

86.    The 2 Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud any entity to which the Debtor was, or became, on or after the date the 2 Year Transfers were made or such obligation was incurred or indebted.

87.    The facts support the allegation that Debtor was purposefully transferring large sums of money to CAS related entities, including CSF through the corporate account.  The

Debtor utilized fraudulent methods to gain certain amounts of money, which were then transferred over the CAS related entities such as CSF.

88.    The Trustee is entitled to recover the 2 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 548 and 550, the 2 Year Transfers to Defendant are avoidable and the Trustee requests judgment in his favor awarding him the recovery of the 2 Year Transfers, plus pre- and post-judgment interest, and any such other relief this Court may deem just, equitable and proper.

### COUNT II
### Avoidance and Recovery of Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1) against CSF

89.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

90.    11 U.S.C. § 548(a)(1)(B)(i-ii) provides that a trustee may "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily (i) received less than a reasonably equivalent value in exchange for such obligation; and (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation."

91.    Within two (2) years of the Petition Date, the Debtor made the 2 Year Transfers to CSF or for the benefit of the CSF as set forth in Exhibit "A" attached hereto and incorporated herein.

92.    The records of the Debtor do not reflect that the Debtor was ever obligated to CSF for any form of debt.

93.     The 2 Year Transfers constitute a "transfer of an interest of the debtor in property" under 11 U.S.C. § 548(a)(1)(B).

94.     The Debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for the 2 Year Transfers and the Debtor was insolvent on the dates that the 2 Year Transfers were made or such obligation was incurred, or became insolvent as a result of the 2 Year Transfers or obligation.

95.     The Trustee is entitled to recover the 2 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 544, 548, 550 and 551, the 2 Year Transfers to CSF are avoidable and the Trustee therefore requests judgment in his favor awarding him the recovery of the 2 Year Transfers, plus pre- and post-judgment interest, and any other such relief this Court may deem just, equitable and proper.

### COUNT III
### Avoidance and Recovery of Fraudulent Transfer Under
### 11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.105(1)(a) against CSF

96.     The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

97.     Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.105(1)(a) for a period of four (4) years prior to filing of the debtor's bankruptcy.

98.     Within four (4) years of the Petition Date, the Debtor transferred to CSF or for the benefit of the CSF $78,146.62 (hereinafter, the "4 Year Transfers"). A detail of the disbursements to CSF or for the benefit of the CSF is incorporated by reference herein and attached hereto as Exhibit "B."

99.      The facts support the allegation that Debtor was purposefully transferring large sums of money to CAS related entities, including the CSF, through the corporate account.  The Debtor utilized fraudulent methods to gain certain amounts of money, which were then transferred over the CAS related entities, including CSF.

100.      The records of the Debtor do not reflect that the Debtor was ever obligated to CSF for any form of debt.

101.      The 4 Year Transfers were a transfer of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred before the Petition Date.

102.      Claims of creditors of the Debtor arose prior to and after the 4 Year Transfers being made by the Debtor to CSF or for the benefit of CSF.

103.      The 4 Year Transfers were made with the actual intent to hinder, delay, or defraud any creditor of the Debtor.

104.      The Trustee is entitled to recover the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 544(b) and 550, as well as § 726.105, Florida Statutes, the Trustee therefore requests judgment in his favor awarding him the recovery of the 4 Year Transfers, plus pre- and post-judgment interest, and any other such relief this Court may deem just, equitable and proper.

### COUNT IV
### Avoidance and Recovery of Fraudulent Transfer Under
### 11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.105(1)(b) against CSF

105.      The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

106.     Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.105(1)(b) for a period of four (4) years prior to filing of the debtor's bankruptcy.

107.     Within four (4) years of the Petition Date, the Debtor made the 4 Year Transfers to CSF or for the benefit of CSF as set forth in Exhibit "B" attached hereto and incorporated herein.

108.     The records of the Debtor do not reflect that the Debtor was ever obligated to CSF for any form of debt.

109.     The 4 Year Transfers were a transfer of property of the Debtor, an interest in the property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred before the Petition Date.

110.     Claims of creditors of the Debtor arose prior to and after the date of the 4 Year Transfers made by the Debtor to CSF or for the benefit of the CSF.

111.     The 4 Year Transfers were made without the Debtor having received reasonably equivalent value in exchange for the 4 Year Transfers, and the Debtor was:

    A.     engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

    B.     intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

112.     The Trustee is entitled to recover the monies in the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 544(b) and 550(A)(1), as well as §726.105(1)(b), Florida Statutes, the Trustee requests judgment in his favor awarding him the recovery of the 4

Year Transfers, pre- and post-judgment interest, and any other such relief which this Court deems just, equitable and proper.

### COUNT V
### Avoidance and Recovery of Fraudulent Transfer Under
### 11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.106 against CSF

113.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

114.    Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.106 for a period of four (4) years prior to filing of the debtor's bankruptcy.

115.    Within four (4) years of the Petition Date, the Debtor made the 4 Year Transfers to CSF or for the benefit of CSF as set forth in Exhibit "B" attached hereto and incorporated herein.

116.    The 4 Year Transfers were a transfer of the property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within four (4) years before the Petition Date.

117.    The records of the Debtor do not reflect that the Debtor was ever obligated to CSF for any form of debt.

118.    The Debtor received less than reasonably equivalent value in exchange for the 4 Year Transfers; and:

      A.    was insolvent on the date the 4 Year Transfers were made or became insolvent as a result of the 4 Year Transfers;

      B.    was engaged in business or transaction, or was about to engage in business or transaction, for which any property remaining with the Debtor was unreasonably small capital; or

C.      intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

119.     At the time of the 4 Year Transfers, the Debtor had creditors whose claims arose prior to the date of the 4 Year Transfers.

120.     The Trustee is entitled to recover the monies in the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 544(b) and 550, as well as § 726.106, Florida Statutes, the Trustee requests judgment in his favor awarding him the recovery of the 4 Year Transfers, pre- and post-judgment interest, and such other relief which this Court deems just, equitable and proper.

**COUNT VI**
**Avoidance and Recovery of Fraudulent Transfers**
**Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)(1) against WISE**

121.     The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

122.     11 U.S.C. § 548(a)(1)(A) provides that a trustee may "avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made or such obligation was incurred, indebted."

123.     Within two (2) years of the Petition Date, the Debtor transferred $33,100.00 to Defendant, WISE (hereinafter, the "2 Year Transfers") or for the benefit of WISE.  A detail of the disbursements to WISE or for the benefit of WISE is incorporated by reference herein and attached hereto as Exhibit "C."

124.    The records of the Debtor do not reflect that the Debtor was ever obligated to WISE for any form of debt.

125.    The 2 Year Transfers constitute a "transfer of an interest of the debtor in property" under 11 U.S.C. § 548(a)(1)(A).

126.    The 2 Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud any entity to which the Debtor was, or became, on or after the date the 2 Year Transfers were made or such obligation was incurred or indebted.

127.    The facts support the allegation that Debtor was purposefully transferring large sums of money to CAS related entities, including WISE through the corporate account.  The Debtor utilized fraudulent methods to gain certain amounts of money, which were then transferred over the CAS related entities such as WISE.

128.    The Trustee is entitled to recover the 2 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 548 and 550, the 2 Year Transfers to WISE are avoidable and the Trustee requests judgment in his favor awarding him the recovery of the 2 Year Transfers, plus pre- and post-judgment interest, and any such other relief this Court may deem just, equitable and proper.

**COUNT VII**
**Avoidance and Recovery of Fraudulent Transfers**
**Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1) against WISE**

129.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

130.    11 U.S.C. § 548(a)(1)(B)(i-ii) provides that a trustee may "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor

voluntarily or involuntarily (i) received less than a reasonably equivalent value in exchange for such obligation; and (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation."

131.    Within two (2) years of the Petition Date, the Debtor made the 2 Year Transfers to WISE or for the benefit of WISE as set forth in Exhibit "C" attached hereto and incorporated herein.

132.    The records of the Debtor do not reflect that the Debtor was ever obligated to WISE for any form of debt.

133.    The 2 Year Transfers constitute a "transfer of an interest of the debtor in property" under 11 U.S.C. § 548(a)(1)(B).

134.    The Debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for the 2 Year Transfers and the Debtor was insolvent on the dates that the 2 Year Transfers were made or such obligation was incurred, or became insolvent as a result of the 2 Year Transfers or obligation.

135.    The Trustee is entitled to recover the 2 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 544, 548, 550 and 551, the 2 Year Transfers to WISE are avoidable and the Trustee therefore requests judgment in his favor awarding him the recovery of the 2 Year Transfers, plus pre- and post-judgment interest, and any other such relief this Court may deem just, equitable and proper.

**COUNT VIII**
**Avoidance and Recovery of Fraudulent Transfer**
**Under 11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.105(1)(a) against WISE**

136.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

137.     Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.105(1)(a) for a period of four (4) years prior to filing of the debtor's bankruptcy.

138.     Within four (4) years of the Petition Date, the Debtor transferred to WISE or for the benefit of WISE $82,889.22 (hereinafter, the "4 Year Transfers"). A detail of the disbursements to WISE or for the benefit of the WISE is incorporated by reference herein and attached hereto as Exhibit "D."

139.     The facts support the allegation that Debtor was purposefully transferring large sums of money to CAS related entities, including WISE, through the corporate account. The Debtor utilized fraudulent methods to gain certain amounts of money, which were then transferred over the CAS related entities, including WISE.

140.     The records of the Debtor do not reflect that the Debtor was ever obligated to WISE for any form of debt.

141.     The 4 Year Transfers were a transfer of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred before the Petition Date.

142.     Claims of creditors of the Debtor arose prior to and after the 4 Year Transfers being made by the Debtor to WISE or for the benefit of WISE.

143.     The 4 Year Transfers were made with the actual intent to hinder, delay, or defraud any creditor of the Debtor.

144.     The Trustee is entitled to recover the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 544(b) and 550, as well as § 726.105, Florida Statutes, the Trustee therefore requests judgment in his favor

awarding him the recovery of the 4 Year Transfers, plus pre- and post-judgment interest, and any other such relief this Court may deem just, equitable and proper.

**COUNT IX**
**Avoidance and Recovery of Fraudulent Transfer Under**
**11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.105(1)(b) against WISE**

145.     The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

146.     Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.105(1)(b) for a period of four (4) years prior to filing of the debtor's bankruptcy.

147.     Within four (4) years of the Petition Date, the Debtor made the 4 Year Transfers to WISE or for the benefit of WISE as set forth in Exhibit "D" attached hereto and incorporated herein.

148.     The records of the Debtor do not reflect that the Debtor was ever obligated to WISE for any form of debt.

149.     The 4 Year Transfers were a transfer of property of the Debtor, an interest in the property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred before the Petition Date.

150.     Claims of creditors of the Debtor arose prior to and after the date of the 4 Year Transfers made by the Debtor to WISE or for the benefit of the WISE.

151.     The 4 Year Transfers were made without the Debtor having received reasonably equivalent value in exchange for the 4 Year Transfers, and the Debtor was:

    A.     engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

      B.      intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

152.      The Trustee is entitled to recover the monies in the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 544(b) and 550(A)(1), as well as §726.105(1)(b), Florida Statutes, the Trustee requests judgment in his favor awarding him the recovery of the 4 Year Transfers, pre- and post-judgment interest, and any other such relief which this Court deems just, equitable and proper.

**COUNT X**
**Avoidance and Recovery of Fraudulent Transfer Under**
**11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.106 against WISE**

153.      The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

154.      Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.106 for a period of four (4) years prior to filing of the debtor's bankruptcy.

155.      Within four (4) years of the Petition Date, the Debtor made the 4 Year Transfers to WISE or for the benefit of WISE as set forth in Exhibit "D" attached hereto and incorporated herein.

156.      The 4 Year Transfers were a transfer of the property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within four (4) years before the Petition Date.

157.      The records of the Debtor do not reflect that the Debtor was ever obligated to WISE for any form of debt.

158.    The Debtor received less than reasonably equivalent value in exchange for the 4 Year Transfers; and:

      A.    was insolvent on the date the 4 Year Transfers were made or became insolvent as a result of the 4 Year Transfers;

      B.    was engaged in business or transaction, or was about to engage in business or transaction, for which any property remaining with the Debtor was unreasonably small capital; or

      C.    intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

159.    At the time of the 4 Year Transfers, the Debtor had creditors whose claims arose prior to the date of the 4 Year Transfers.

160.    The Trustee is entitled to recover the monies in the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 544(b) and 550, as well as § 726.106, Florida Statutes, the Trustee requests judgment in his favor awarding him the recovery of the 4 Year Transfers, pre- and post-judgment interest, and such other relief which this Court deems just, equitable and proper.

## COUNT XI
### Aiding and Abetting Breach of Fiduciary Duty against WISE

161.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

162.    As an organization directly affiliated with the CAS and retained by the Debtor, WISE aided and abetted Piedra's breach of his principal fiduciary duty to the Debtor P.A. and its creditors.

163.     Specifically, Piedra, as principal, had a fiduciary duty to discharge his duties in good faith, with the care an ordinarily prudent officer or director in a like position would exercise and in a manner reasonably believed to be in the Debtor's best interest. Piedra further had a fiduciary duty not to utilize corporate funds in an improper manner.

164.     Piedra breached this duty by fraudulently getting patients to sign up for financing agreements for the sole purpose of transferring the advanced funds to CAS related entities. Once in receipt of the advanced funds, Piedra did not render many or all of the promised services, overbilled patients, and charged high cancellation rates to make it difficult for patients to back out of their treatment plans.

165.     Piedra further breached his fiduciary duty by purchasing various CAS related products from WISE that did not provide the Debtor P.A. with any actual value or consideration. Piedra had a fiduciary duty to properly utilize corporate funds for the benefit of the Debtor P.A. and failed to do so.

166.     WISE was in charge of assisting the Debtor to handle administrative and management duties. It knew of the breach of fiduciary duty on part of the primary wrongdoer and offered substantial assistance or encouragement of the wrongdoing by assisting in the handling of all managerial and administrative duties of the Debtor. It produced various manuals and books with the intention of assisting the Debtor to transfer its funds to various CAS related entities. At all relevant times, as an organization in charge of supervising the Debtor's administrative and management aspects, it was aware and assisted in the Debtor's scheme to defraud patients.

167.     The foregoing breaches proximately caused damage to the Debtor and its creditors.

168.     WISE's aiding and abetting of Piedra was not privileged or justified.

**WHEREFORE**, by reason of the foregoing, the Trustee demands judgment against WISE, which damages include, but may not be limited to, the increased insolvency of the Debtor measured in part by the unpaid claims of the creditors of the Debtor resulting from the aiding and abetting by WISE of Piedra's breaches and/or the increased insolvency of the Debtor, plus pre- and post-judgment interest, and any such other relief as this Court deems just and proper.

**COUNT XII**
**Avoidance and Recovery of Fraudulent Transfers**
**Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)(1) against CCHR**

169.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

170.    11 U.S.C. § 548(a)(1)(A) provides that a trustee may "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made or such obligation was incurred, indebted."

171.    Within two (2) years of the Petition Date, the Debtor transferred $14,750.00 to Defendant, CCHR (hereinafter, the "2 Year Transfers") or for the benefit of CCHR. A detail of the disbursements to CSF or for the benefit of the CSF is incorporated by reference herein and attached hereto as Exhibit "E."

172.    The records of the Debtor do not reflect that the Debtor was ever obligated to CCHR for any form of debt.

173.    The 2 Year Transfers constitute a "transfer of an interest of the debtor in property" under 11 U.S.C. § 548(a)(1)(A).

174.    The 2 Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud any entity to which the Debtor was, or became, on or after the date the 2 Year Transfers were made or such obligation was incurred or indebted.

175.    The facts support the allegation that Debtor was purposefully transferring large sums of money to CAS related entities, including CCHR, the Defendant, through the corporate account. The Debtor utilized fraudulent methods to gain certain amounts of money, which were then transferred over the CAS related entities.

176.    The Trustee is entitled to recover the 2 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 548 and 550, the 2 Year Transfers to CCHR are avoidable and the Trustee requests judgment in his favor awarding him the recovery of the 2 Year Transfers, plus pre- and post-judgment interest, and any such other relief this Court may deem just, equitable and proper.

**COUNT XIII**
**Avoidance and Recovery of Fraudulent Transfers**
**Under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1) against CCHR**

177.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

178.    11 U.S.C. § 548(a)(1)(B)(i-ii) provides that a trustee may "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily (i) received less than a reasonably equivalent value in exchange for such obligation; and (ii) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation."

179.     Within two (2) years of the Petition Date, the Debtor made the 2 Year Transfers to CCHR or for the benefit of the CCHR as set forth in Exhibit "E" attached hereto and incorporated herein.

180.     The records of the Debtor do not reflect that the Debtor was ever obligated to CCHR for any form of debt.

181.     The 2 Year Transfers constitute a "transfer of an interest of the debtor in property" under 11 U.S.C. § 548(a)(1)(B).

182.     The Debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for the 2 Year Transfers and the Debtor was insolvent on the dates that the 2 Year Transfers were made or such obligation was incurred, or became insolvent as a result of the 2 Year Transfers or obligation.

183.     The Trustee is entitled to recover the 2 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 544, 548, 550 and 551, the 2 Year Transfers to CCHR are avoidable and the Trustee therefore requests judgment in his favor awarding him the recovery of the 2 Year Transfers, plus pre- and post-judgment interest, and any other such relief this Court may deem just, equitable and proper.

**COUNT XIV**
**Avoidance and Recovery of Fraudulent Transfer Under**
**11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.105(1)(a) against CCHR**

184.     The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

185.     Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.105(1)(a) for a period of four (4) years prior to filing of the debtor's bankruptcy.

186.      Within four (4) years of the Petition Date, the Debtor transferred to CSF or for the benefit of the CCHR $54,500.00 (hereinafter, the "4 Year Transfers").    A detail of the disbursements to CCHR or for the benefit of the CCHR is incorporated by reference herein and attached hereto as Exhibit "F."

187.      The facts support the allegation that Debtor was purposefully transferring large sums of money to CAS related entities, including CCHR, through the corporate account.    The Debtor utilized fraudulent methods to gain certain amounts of money, which were then transferred over the CAS related entities, including CCHR.

188.      The records of the Debtor do not reflect that the Debtor was ever obligated to CCHR for any form of debt.

189.      The 4 Year Transfers were a transfer of property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred before the Petition Date.

190.      Claims of creditors of the Debtor arose prior to and after the 4 Year Transfers being made by the Debtor to CCHR or for the benefit of CCHR.

191.      The 4 Year Transfers were made with the actual intent to hinder, delay, or defraud any creditor of the Debtor.

192.      The Trustee is entitled to recover the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon pursuant to § 550(a)(1).

**WHEREFORE**, by reason of the foregoing, and pursuant to 11 U.S.C. §§ 544(b) and 550, as well as § 726.105, Florida Statutes, the Trustee therefore requests judgment in his favor awarding him the recovery of the 4 Year Transfers, plus pre- and post-judgment interest, and any other such relief this Court may deem just, equitable and proper.

## COUNT XV
### Avoidance and Recovery of Fraudulent Transfer Under
### 11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.105(1)(b) against CCHR

193.    The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

194.    Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.105(1)(b) for a period of four (4) years prior to filing of the debtor's bankruptcy.

195.    Within four (4) years of the Petition Date, the Debtor made the 4 Year Transfers to CCHR or for the benefit of CCHR as set forth in Exhibit "F" attached hereto and incorporated herein.

196.    The records of the Debtor do not reflect that the Debtor was ever obligated to CCHR for any form of debt.

197.    The 4 Year Transfers were a transfer of property of the Debtor, an interest in the property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred before the Petition Date.

198.    Claims of creditors of the Debtor arose prior to and after the date of the 4 Year Transfers made by the Debtor to CCHR or for the benefit of CCHR.

199.    The 4 Year Transfers were made without the Debtor having received reasonably equivalent value in exchange for the 4 Year Transfers, and the Debtor was:

    A.    engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

    B.    intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

200.     The Trustee is entitled to recover the monies in the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 544(b) and 550(A)(1), as well as §726.105(1)(b), Florida Statutes, the Trustee requests judgment in his favor awarding him the recovery of the 4 Year Transfers, pre- and post-judgment interest, and any other such relief which this Court deems just, equitable and proper.

## COUNT XVI
### (Avoidance and Recovery of Fraudulent Transfer Under 11 U.S.C. § 544(b), § 550(A)(1), and F.S.A. § 726.106 against CCHR

201.     The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as if fully set forth herein, and further asserts:

202.     Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property as of any obligation incurred by the debtor that is voidable under F.S.A. § 726.106 for a period of four (4) years prior to filing of the debtor's bankruptcy.

203.     Within four (4) years of the Petition Date, the Debtor made the 4 Year Transfers to Defendant or for the benefit of the Defendant as set forth in Exhibit "F" attached hereto and incorporated herein.

204.     The 4 Year Transfers were a transfer of the property of the Debtor, an interest in property of the Debtor, or an obligation incurred by the Debtor, that was made or incurred within four (4) years before the Petition Date.

205.     The records of the Debtor do not reflect that the Debtor was ever obligated to CCHR for any form of debt.

206.     The Debtor received less than reasonably equivalent value in exchange for the 4 Year Transfers; and:

      A.     was insolvent on the date the 4 Year Transfers were made or became insolvent as a result of the 4 Year Transfers;

      B.     was engaged in business or transaction, or was about to engage in business or transaction, for which any property remaining with the Debtor was unreasonably small capital; or

      C.     intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

207.     At the time of the 4 Year Transfers, the Debtor had creditors whose claims arose prior to the date of the 4 Year Transfers.

208.     The Trustee is entitled to recover the monies in the amount of the 4 Year Transfers plus pre- and post-judgment interest thereon.

**WHEREFORE**, pursuant to 11 U.S.C. §§ 544(b) and 550, as well as § 726.106, Florida Statutes, the Trustee requests judgment in his favor awarding him the recovery of the 4 Year Transfers, pre- and post-judgment interest, and such other relief which this Court deems just, equitable and proper.

### COUNT XVII
### Avoidance and Recovery of Fraudulent Transfers
### Under 11 U.S.C. §§ 548(a)(1)(A) and 550(a)(1) against IAS

209.     The Trustee incorporates by reference and realleges Paragraphs 1 through 80 of this Complaint as is fully set forth herein.

210.     11 U.S.C. § 548(a)(1)(A) provides that a trustee may "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay,